VILLAGE OF MARYSVILLE, APPELLANT, *v.* BOERGER ET AL., APPELLEES.

[Cite as Marysville v. Boerger, 20 Ohio App. 2d 61.]

(No. 341—Decided October 15, 1969.)

*Mr. Robert O. Hamilton,* for appellant.
*Messrs. Hoopes & Hoopes,* for appellees.

Cole, J. The question here presented is whether the city manager of the village of Marysville, a charter village, has the power to bring an injunctive action under Section 713.13, Revised Code, to enjoin an alleged use violation of the village zoning ordinance, without specific authorization by the village council. The court below held that such authorization by council was required and that this action should be dismissed because the city manager had no authority to bring it.

We have been able to find only one Ohio case explicitly dealing with the power of a municipal officer to institute suit in the name of the municipality without explicit authorization to do so by the legislative authority. In *Grall, Mayor,* v. *King* (1921), 14 Ohio App. 88, the issue was presented by the filing by the mayor of a petition in error under the older appellate procedure.

The court said in effect

(a) The mayor does not possess the power to begin an action in the name of the corporation, and

(b) The solicitor cannot bring such an action unless he is authorized by resolution of council to do so.

However, that case must be distinguished on several grounds. Here, in the case before us, we have a charter village—the general municipal statutes are not involved. Here the respective officers—manager and solicitor—are governed by the particular provisions of a unique charter and not by the general statutes. Here we are dealing with the enforcement of a zoning ordinance and not with a special appellate action. The *Grall case* is also disapproved in later cases. See *In re Removal of Taylor,* 172 Ohio St. 394, and *Gray* v. *State, ex rel. Putnam,* 24 Ohio App. 445.

By virtue of Marysville's Charter, Section 1.03, municipal powers are generally vested in an elective council, which "shall enact local ordinances and resolutions * * * and appoint a city manager who shall be the chief execu-

tive and administrative officer and shall see that the policies and legislation adopted by council are enforced." In short: it is an explicit duty of the manager to enforce the city ordinances.

In 67 Corpus Juris Secundum 425, it is said that, "Generally, public officers have capacity to sue commensurate with their public trust or duties without statutory authority."

Since we have here a duty to enforce, the necessary power to enforce would be implicit, to the extent required, but it is unnecessary to make this implication, as the power to enforce is later explicitly conferred by the charter on the manager.

Section 4.02. "* * * he shall have the power and duty to:

"(1) See that all municipal and state laws are enforced."

It would be our conclusion that the manager has, by virtue of these charter provisions, power to enforce duly enacted ordinances of the village. Generally, this would be done by criminal proceedings against violators, but in the special field of zoning the Legislature has made available a special injunctive remedy.

Section 713.13, Revised Code, reads as follows:

"No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to Sections 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution. In the event of any such violation, or imminent threat thereof, the municipal corporation, or the owner of any contiguous or neighboring property who would be especially damaged by such violation, in addition to any other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation."

The question then becomes: does the power to *enforce* involve only the use of criminal proceedings or does it also include other modes of compelling obedience to the ordinance?

In the *Grall case* stress was laid upon the fact that under the general municipal statutes the solicitor must be authorized to institute action by resolution of council. In the Marysville Charter, however, such is not the case:

Section 5.03 (as to the city attorney), reads, in part, as follows:

"Subject to the direction of the city manager, he shall represent the municipality in all suits or cases in which the municipality may be a party."

Thus, only the direction of the city manager, not the resolution of the village council, is required by this charter, and the limitation which was critical in the *Grall case* does not apply.

The injunction remedy provided by Section 713.13, Revised Code, is an alternate civil remedy for the enforcement of zoning ordinances. We think the broad grant of power to *enforce* ordinances encompasses not only the use of criminal proceedings but also such a specific civil alternative. In Webster's Third New International Dictionary, "enforce" is given this meaning:

1. "to give force to * * * ."

Under comparison with "implement," the Dictionary says, of "enforce":

"Enforce refers to requiring operation, observance, or protection of laws, orders, contracts, and agreements by authority, often that of a whole government or its executive or legal branches * * *."

Black's Law Dictionary, 4th Ed., says:

"Enforce. To put into execution; to cause to take effect; to make effective; as, to enforce a writ, a judgment, or the collection of a debtor fine; * * *"

See, also, 30 Corpus Juris Secundum 696.

Nothing in this definition appears to limit "enforce" to the use of the power of the state through criminal proceedings. Any mode of action which properly and constitutionally uses the power of the state to create observance of its laws would be within the spectrum of the term. For this reason, it is our conclusion that the use of the injunctive process provided to municipal corporations by Section

713.13, Revised Code, is within the power of the city manager to *enforce* ordinances given to him by the Marysville Charter itself, and its use by him requires no authorization by the village council.

*Judgment reversed.*

YOUNGER and GUERNSEY, JJ., concur.